GRAY, TRUSTEE, ET AL. *v.* UNION TRUST COMPANY OF INDIANAPOLIS ET AL.

[Nos. 26,847 and 26,897. Filed February 7, 1938. Mandate modified April 27, 1938.]

*Milford M. Miller* and *William C. Welborn,* for appellants.

*Albert Ward, Smith, Remster, Hornbrook & Smith, John Rauch* and *John D. T. Bold,* for appellees.

FANSLER, J.—James Gray died testate in 1904, a citizen and resident of Vanderburgh County, Indiana, leav-

ing, as his sole surviving heirs at law, his widow, Margaret M. Gray, and his daughter, the appellee Margaret Gray Patterson. By his will, he established a trust in the residue of his estate, the entire net income of which was to be paid to his widow and his daughter, and the survivor of them, during their lives. At their death the trust was to terminate, and the property go to the surviving child or children, or descendants of any child or children, of Margaret Gray Patterson, if any, and if she have no surviving child or children, or descendants of such, to those who would be the heirs at law of the testator, had he died, at the time of the death of Margaret Gray Patterson or Margaret M. Gray. Margaret M. Gray is dead. Margaret Gray Patterson has had no children. It thus appeared at the time of the death of James Gray that his brothers, Allen Gray, Harry Gray, and William W. Gray, or their descendants, would inherit the trust property upon the death of Margaret M. Gray and Margaret Gray Patterson, if Margaret Gray Patterson was not survived by descendants. James Gray named his three brothers as testamentary co-trustees. The will was admitted to probate. Allen Gray qualified as executor. The estate was administered, and, pursuant to the order confirming his final report, the executor delivered the residue of the estate, amounting to several hundred thousand dollars, to himself and his two brothers as testamentary trustees. These trustees assumed the full management and control of the trust estate, and continued such control until the death of Allen Gray in 1920. Thereafter the surviving brothers continued to administer the trust until the death of Harry Gray in 1922. Thereafter William W. Gray assumed the sole management and control of the trust until the 16th day of September, 1926.

None of the brothers assuming to act as trustees ever qualified by giving bond, subscribing an oath, or sub-

mitting any inventory or report to any court, and they at all times acted without the direction of a court. During this period the trustees sold property belonging to the corpus of the trust, changed investments, made collections and distributions according to their own interpretation of the provisions of the trust agreement, and paid certain portions of the income to Margaret M. Gray and Margaret Gray Patterson. As a result of the administration of the trust, during the period from 1905 until 1922, the life beneficiaries of the trust concluded that they were not receiving the income that they were entitled to under the provisions of the will, and that the trustees had misconducted themselves and had misappropriated certain of the trust assets.

In May, 1922, Margaret M. Gray and the appellee Margaret Gray Patterson instituted a proceeding in the Vanderburgh Probate Court, alleging that the trustees had withheld large sums of income and had submitted false reports to the beneficiaries; that they had converted income-producing property into nonincome-producing property, had misapplied income to increase the corpus of the estate, had sold valuable properties of the trust to themselves and paid much less therefor than the property was worth, and had purchased from themselves undesirable nonincome-producing property. William W. Gray and Harry Gray petitioned to remove the proceeding to the United States District Court for the Southern District of Indiana, upon the ground of diversity of citizenship, alleging that Margaret Gray Patterson was a citizen of New York, and Harry Gray and William W. Gray were citizens of California. The Vanderburgh Probate Court ordered the removal of the cause. Margaret M. Gray and Margaret Gray Patterson appeared in the United States District Court and moved to remand the cause to the Vanderburgh Probate Court. This motion was overruled, and the United

States District Court retained jurisdiction. The matter was referred to a master, Mr. Charles Martindale, who heard the evidence, and, on April 15, 1925, filed a report in which he concluded that the trust was entitled to recover more than $750,000 from the trustees; that more than $500,000 of the amount should be credited as income in the trust estate. Exceptions to the report were filed, and William W. Gray, as surviving trustee of the estate of James Gray, then suggested to the court that there was a defect of indispensable parties, and, upon the suggestion, he was made a defendant as executor and trustee of the estate of Allen Gray, and as executor and trustee of the estate of Harry Gray. It will be seen that William W. Gray, in his individual and fiduciary capacities, represented all of the defendants. The report of Commissioner Martindale was set aside, and a new reference was made to Mr. William H. Thompson as special master. Mr. Thompson heard the evidence, and filed a report in which he found that the trustees had misapplied income, and had appropriated large amounts of the trust estate to their own use, and that William W. Gray and Allen Gray were guilty of willful maladministration for their own benefit. He recommended the recovery of more than $500,000. Both masters recommended that William W. Gray be removed as trustee of the James Gray estate. All parties filed exceptions to this report, and, pending a hearing, on September 16, 1926, all parties to the litigation appeared in open court and submitted a final decree, which had been agreed upon by all of the parties, and was signed by all of the attorneys of record. With this decree, William W. Gray submitted his written resignation as trustee of the James Gray trust, effective as of the close of business November 15, 1926. The resignation was accepted by the court, and the decree was entered as a final judgment and decree determining the rights of the

parties, and it was specifically agreed of record that the parties waived the right to appeal. By the decree and judgment so entered, the defendants, that is, William W. Gray, in his personal capacity and his various fiduciary capacities, agreed to pay more than $500,000 to the trust, most of which was by the decree found to be chargeable to income, and it was ordered that it be paid out to Margaret M. Gray and Margaret Gray Patterson. The United States District Court then appointed appellee Union Trust Company of Indianapolis and Stuart T. Fisher, as trustees of the James Gray trust, to succeed William W. Gray. William W. Gray thereafter paid the amounts, found due from him to the trust, in the judgment and decree, to the Union Trust Company of Indianapolis and Stuart T. Fisher, trustees; and, as an incident to procuring the funds with which to make said payments, filed a petition in the Vanderburgh Probate Court, in the matter of the estate of one of his brothers, by which he sought and procured authority of court to pay part of the judgment out of his brother's estate. All of the parties acquiesced in, and carried out, the provisions of the final decree and judgment in full. William W. Gray delivered the assets in his possession and custody, as trustee, to the Union Trust Company of Indianapolis and Stuart T. Fisher. He paid all of the amounts found due from him and his various trusts to them, and they in turn paid out to Margaret M. Gray and Margaret Gray Patterson the amounts which were decreed as income and due them as life beneficiaries. Thereafter the new trustees regularly filed reports of their management of the trust in the United States District Court for a period of more than six years. William W. Gray, in his individual capacity, had numerous substantial business transactions with the trust, through the new trustees, wherein he purchased trust assets, and engaged in litigation for

the partition of real estate in which he was jointly interested, and in many of which transactions his interests were adverse to the interests of the trust.

It is apparent that William W. Gray and his brothers were never disinterested trustees. They always had an interest adverse to that of Margaret M. Gray and Margaret Gray Patterson, since, if Margaret Gray Patterson died without descendants, they, or their descendants, would finally inherit the corpus of the trust property. Thus their interest was to minimize the amount to be paid as net income to Margaret M. Gray and Margaret Gray Patterson in order to increase and retain in the trust as much property as possible. Their misappropriations and malfeasances did not injure them or their estates, but injured only the life beneficiaries and the prospective descendants of Margaret Gray Patterson. After the decree and judgment, by agreement, in 1926, all of the parties considered and treated the entire controversy as settled, and recognized the Union Trust Company of Indianapolis and Stuart T. Fisher as the legal trustees. In 1932, Margaret M. Gray died testate, and the Old National Bank of Evansville was appointed executor of her estate. A minor question arose as to whether the proceeds of certain interest coupons, maturing after her death, should be paid in full to the surviving life beneficiary, or whether that portion which accrued before the date of the death of Margaret M. Gray should be paid to her executor. The trustees, being in doubt, applied to the court of their appointment for advice and instruction. Upon hearing, the court entered an order instructing the trustees. An appeal was taken by the executor of the estate of Margaret M. Gray to the United States Circuit Court of Appeals for the Seventh Judicial Circuit. On August 1, 1933, the Circuit Court of Appeals handed down an opinion, reported in 66 F. (2d) 367, reversing the de-

cree of the United States District Court instructing the trustees, and remanding the case, with instructions to dismiss the trustees' petition, upon the ground that the United States District Court was without jurisdiction to administer the trust estate of James Gray, deceased. In the light of this judgment, to the effect that the United States District Court was without jurisdiction to administer the trust, Margaret Gray Patterson, in November, 1933, applied to the Vanderburgh Probate Court for a citation against the Union Trust Company of Indianapolis and Stuart T. Fisher, requiring them to appear in that court and account to that court for the trust property and their management thereof. The citation issued, and the Union Trust Company of Indianapolis and Stuart T. Fisher, trustees, asked the United States District Court for instructions, and that court issued its order directing them to respond to the citation and to account to the Vanderburgh Probate Court for the trust property and the administration of the trust. Thereafter, in November, 1933, the Union Trust Company of Indianapolis and Stuart T. Fisher appeared in the Vanderburgh Probate Court and filed an answer and submitted the trust property and their accounts to that court. Pending a determination of the issues, Stuart T. Fisher died, and his administratrix was substituted.

William W. Gray, personally, and in the various interests in which he appeals, was brought into this proceeding. By numerous pleadings, the particulars of which need not be noticed, appellants questioned the judisdiction of the court and the correctness of the accounting. They asserted that, upon the authority of the decision of the United States Circuit Court of Appeals above referred to, the judgment and decree, by agreement of the parties above referred to, was and is void and of no effect whatever, and that therefore the

Union Trust Company of Indianapolis and Stuart T. Fisher, trustees, should be required to account for, and pay back to William W. Gray, personally, and in his various fiduciary capacities, all of the money which was paid to the trustees pursuant to the compromise agreement, decree and judgment referred to. It was asserted by these pleadings that William W. Gray continued to be the *de jure* trustee of the trust; that the payments made to Margaret M. Gray and Margaret Gray Patterson, pursuant to the judgment of the United States District Court, and out of the funds paid to the Union Trust Company of Indianapolis and Stuart T. Fisher, trustees, by William W. Gray in his various capacities, under the judgment and decree of the United States District Court, should be recaptured and recovered; that, in effect, the entire controversy and the trust should be restored to the condition in which it was found by the United States District Court before the judgment and decree, by agreement, in 1926. There is a further contention which seems to be to the effect that Margaret Gray Patterson is estopped from asserting that jurisdiction of the trust is in the Vanderburgh Probate Court while she retains the money paid into the trust by William W. Gray in his various capacities, and paid by the new trustees to her under the judgment of the United States District Court entered in 1926. The court below held against appellants in all of these contentions, and approved the report and accounting of the trustees. From this decision, the appeal in No. 26,897 was perfected.

Appellants assign 281 errors, and their brief is in two volumes and contains a total of over 850 pages. Space does not permit, nor does the full consideration and determination of the questions require, that each of these errors, and the various complicated arguments

and contentions urged in support of them, be separately considered.

On the day that the Union Trust Company of Indianapolis and Stuart T. Fisher appeared and answered and submitted their accounts in the Vanderburgh Probate Court, William W. Gray and Margaret Gray Patterson likewise appeared, and it was made to appear that the respondent trustees were bringing before the court the body of the trust, which consisted of several hundred thousand dollars' worth of real and personal property, which required constant attention and constant dealings with third parties; that, because of the decision of the United States District Court of Appeals above referred to, and of the contention of William W. Gray that he was the *de jure* trustee, doubts and uncertainty had arisen as to the right of the Union Trust Company of Indianapolis and Stuart T. Fisher, trustees, to bind the trust; that the property required constant and vigilant care; and that the estate would suffer if not administered by some one with clear legal authority; and that, in order to preserve the trust estate, a receiver should be appointed to take over and administer the same under the orders of the court until there could be a determination of the question and the establishment of a *de jure* trustee. A receiver was appointed *pendente lite*. There was no appeal, and it is too late now to question the appointment, but it may be said that any other action would have constituted an abuse of discretion.

It is contended that the Vanderburgh Probate Court has no jurisdiction to appoint receivers. But it has exclusive jurisdiction to administer trusts and to appoint trustees. "Receiver," after all, is but a name applied to one type of trustee, and, regardless of the name used, the court has ample inherent power, and it was its duty, to appoint a conservator to manage and protect the trust and the trust property

pending a determination of the controversy and the establishment of some one as a *de jure* trustee.

The Union Trust Company of Indianapolis, as receiver, filed a petition for instructions as to the payment of income of the trust. Appellants filed objections, principally based upon the ground that the court had no jurisdiction to appoint a receiver, and no jurisdiction to order a distribution of the income of the trust. The court found that the net income was payable to Margaret Gray Patterson, and determined that a certain proportion of the income accruing from certain securities prior to the death of Margaret M. Gray was payable to her estate, and the balance to Margaret Gray Patterson, but ordered that, pursuant to the stipulation of the parties, only $800 per month should be payable by the receiver to Margaret Gray Patterson until the final determination of the controversy. Cause No. 26,847 is appellants' appeal from this order, and in this appeal appellants have assigned 244 errors.

There is no controversy concerning the accounts of the Union Trust Company of Indianapolis and Stuart T. Fisher, trustees. There is no controversy as to any of the material facts. The contentions of the appellants in both cases are the same. They are in substance that the Vanderburgh Probate Court does not have jurisdiction to administer the trust; that Margaret Gray Patterson is estopped from asserting that there is jurisdiction in the Vanderburgh Probate Court, by reason of having accepted and retained the benefits of the judgment in favor of her and of the trust in the United States District Court; that the judgment of the United States District Court is void and that therefore appellants are entitled to recover from the trust the amounts paid under that judgment; that, if the Vanderburgh Probate Court has or takes jurisdiction, appellants are entitled to have repaid to them the sums

which they paid under the decree in the United States District Court; that the appellant William W. Gray is the *de jure* trustee; and that, if an accounting be had, it should involve a redetermination of the matters settled and adjudicated by the decree of the United States District Court. It thus appears that substantially the same questions are involved in both appeals.

In the appeal from the order of the United States District Court, instructing the trustees as to the disposition of income, the United States Circuit Court of Appeals decided that the District Court had no jurisdiction to appoint trustees for, or to administer, the trust. That is the law of the case in so far as the jurisdiction of the District Court is concerned. The Vanderburgh Probate Court now has, and always has had, jurisdiction to administer the trust. This can hardly be seriously questioned, even in the face of a contention that the United States District Court might also have concurrent jurisdiction. But it does not follow that, because the District Court had no jurisdiction to appoint a trustee and to administer the trust, the judgment of 1926 is void. The original proceeding instituted by the appellee Margaret Gray Patterson in the Vanderburgh Probate Court does not seem to have questioned the authority of the then acting trustees. Primarily it sought an accounting, and that the trustees be charged with, and required to account for, certain monies because of misappropriation and maladministration. Appellant William W. Gray and his brother, Harry Gray, the then acting trustees, procured removal of the proceeding to the United States District Court, the appellee Margaret Gray Patterson resisting, and after it was removed she sought to have it returned to the Vanderburgh Probate Court. The then trustees objected and resisted, and it was upon their solicitation and contention that it remained in the District Court.

After the evidence was taken by two masters, both of whom found that there had been misappropriation and maladministration, by reason of which the trustees were indebted to the trust in a sum exceeding half a million dollars, there was an agreement in settlement of the controversy, subscribed to by the trustees and the interests which are appellants' here. The terms of this agreement were embodied in the decree and judgment at the request of all the parties, and, as a part of the settlement, it was agreed that all parties waived their right to appeal and thus question the legality and correctness of the judgment and decree. Margaret Gray Patterson had contended that the District Court did not have jurisdiction, but that jurisdiction was in the Vanderburgh Probate Court. If the issues had been decided against her, or if there had been an unfavorable judgment and decree, she might have appealed to the circuit court where her contention might have been sustained. The United States District Court is a court of general jurisdiction. It had jurisdiction of the parties and jurisdiction to determine whether the subject-matter was within its jurisdiction. If it decided this question erroneously, the error might have been corrected on appeal. The waiver of the right to appeal waived the right to question the jurisdiction of the court to enter the decree and judgment, even if the trustees might have questioned it after procuring the court, upon their motion, to take jurisdiction. But, even if the judgment and decree was void for want of jurisdiction in the District Court, and even if the appellants here are not estopped from asserting that the decree is void by reason of having invoked the jurisdiction, the agreement in settlement, acquiesced in and acted upon by the parties, sufficiently binds all of them. Margaret Gray Patterson and Margaret M. Gray accepted and retained a large sum of money paid by appellants here, upon the agree-

ment that it should be in full settlement of all sums due, because of alleged misappropriation and maladministration, notwithstanding one of the masters, at least, had found a much greater amount due; and appellants, by agreeing to pay, and paying, the amounts which were agreed upon, were excused from answering as to any further indebtedness so far as Margaret Gray Patterson and Margaret M. Gray were concerned. There is no contention that any of the parties labored under any coercion, or restraint, or fraud, or misrepresentation, at the time of the settlement. For seven years it was treated by all the parties as a legal and binding settlement of the controversy. If there had been no action in any court, if the life beneficiaries had merely charged the acting trustees with maladministration and misappropriation of the trust property and income, and if the trustees had agreed to pay, and had paid, the half million dollars into the trust, partly for the benefit of the life beneficiaries, and partly for the benefit of the corpus of the trust, upon the understanding that the sum was in settlement of any amounts for which they were liable, or for which they were being charged with liability, it would have been sufficient, and seven years afterwards the trustees would not, in the absence of a showing of mistake, misrepresentation, fraud, or coercion, be heard to say that they were entitled to a return of the money, or a re-examination of the question of their liability. The judgment and decree of the District Court would seem to be valid and binding, but, whether it is or not, the settlement effected by that judgment and decree, entered upon the request and the agreement of the parties in settlement of the controversy, is binding and concludes them upon the questions then in controversy.

One of the conditions of the agreement and the decree and judgment was that the sole surviving trustee

nominated in the will, appellant William W. Gray, ▉ should resign as trustee, and he tendered his written resignation. The surviving brothers of James Gray had taken possession of the property of the trust, and had assumed to act without giving bond, without filing an inventory with, or reporting or accounting to, any court, and they managed and dealt with the trust and the trust property without asking the direction or orders of any court. Whether they were *de jure* trustees need not be determined. They were at least *de facto* trustees. The intention of William W. Gray to resign, and discontinue and relinquish his duties, as surviving trustee, by agreeing to tender his resignation, and by tendering it, to the District Court, cannot be doubted. No court had appointed him. He tendered his resignation to the court that the parties apparently believed to be the proper one to accept it. He relinquished the duties and delivered the property of the trust to the Union Trust Company of Indianapolis and Stuart T. Fisher, trustees, appointed by that court, with the intention of divesting himself of further responsibility as trustee, and he thereafter dealt with the trust in business matters in a manner entirely inconsistent with any claim or contention that he was the trustee or owed any duty or responsibility to the trust as a trustee. It was at least a *de facto* resignation, and the trustees appointed by the District Court became at least *de facto* trustees, in good faith, believing themselves to be the *de jure* trustees. They reported regularly to the court which they believed had jurisdiction to administer the trust, and sought the advice and direction of the court, which the original trustees had never done. After the decision of the Circuit Court of Appeals that the District Court had no jurisdiction to administer the trust, and upon citation to appear in the Vanderburgh Probate Court, they sought permission of

the District Court, which was granted, and submitted themselves and the trust and the trust property to the jurisdiction of the Vanderburgh Probate Court, and offered to report their doings and to submit to the directions of that court. The Vanderburgh Probate Court has never appointed trustees. The Union Trust Company of Indianapolis and Stuart T. Fisher were the acting trustees. William W. Gray had abandoned the trust and whatever rights he may have had to act as trustee, and, in view of his abandonment, and the findings of both masters in the federal court that he had misappropriated property of the trust, and his admission of liability by the payment of a large sum of money in compromise, it would be the undoubted duty of the court having jurisdiction of the trust to remove him if it considered that he was the trustee in law or in fact. He has undoubtedly forfeited any rights which he may have had to act as trustee. The Vanderburgh Probate Court has never appointed him as trustee, and it certainly would be an abuse of discretion to now or hereafter appoint him as trustee.

Margaret Gray Patterson is not estopped from asserting that the Vanderburgh Probate Court has jurisdiction to administer the trust. She always so contended. It was the appellants who contended otherwise.

She was apparently content with supervision of the trust by the United States District Court until, by the decision of the Circuit Court of Appeals, that became impossible. She had the undoubted right to have the trust supervised and administered by some court having jurisdiction, and, when the District Court could no longer act, she was quite within her rights in appealing to the Vanderburgh Probate Court, where she had originally sought protection for the trust and herself as a beneficiary thereof.

No question is made upon the correctness of the ac-

counts of the Union Trust Company of Indianapolis and Stuart T. Fisher, as trustees, or of the correctness of the accounts of the receiver. If, in the multitude of pleadings and assignments of error, any question is made about the right of the appellee Margaret Gray Patterson to receive the entire net income from the trust property it cannot be sustained. The terms of the trust are clear, unambiguous, and unmistakable. The amounts paid to the life beneficiaries of the trust, under the decree and judgment of the District Court in 1926, as deferred payments of income which had been misappropriated by the former trustees, were agreed to by the appellants, and they are not in a position now to question those payments. The former trustees had not made reports to any court, but the entire matter of their management of the trust was gone into before the masters in that proceeding, and the entire record of that proceeding and all of the reports of the Union Trust Company of Indianapolis and Stuart T. Fisher, as trustees, made to the District Court, were before the court in the instant case, and, since no deficiency in the evidence is pointed out, it must be assumed that there was sufficient basis for a determination of the amount of income due, and paid to, the life beneficiaries. Appellants offered no evidence, nor is it contended, that the accounts are incorrect in respect to income. Upon the evidence before the court, appellants merely contended that the court was without jurisdiction to determine the question. That the court had jurisdiction to administer a trust of this kind, and jurisdiction to determine from time to time the amounts that shall be allocated to income and paid out as such, cannot be doubted.

The court approved the accounts of the Union Trust Company of Indianapolis and Stuart T. Fisher, trustees,

and found that they had, in good faith, prudently administered the trust, relying upon the appointment by the United States District Court. It was also found that they had earned reasonable compensation and incurred reasonable expenses in the amount of $35,057.64. But the trustees were not allowed this amount. Failure to make this allowance is made the basis of cross-errors. The assignment of cross-errors was timely filed in the office of the clerk of this court, but was not attached to the transcript of the record filed by appellants. There was no motion to dismiss or strike out the assignment of cross-errors, and appellants sought, and procured, an extension of time within which to file their brief upon the merits. The appellee trustees filed their brief upon their assigned cross-errors; and, by their answer brief, the appellants contend that no question is presented by the assignment because it is not entered on the transcript or attached thereto. Appellants rely upon *Dutton* v. *Dutton* (1868), 30 Ind. 452, 455; *Merchants National Bank of Muncie* v. *Delaware School Twp.* (1916), 185 Ind. 658, 669, 114 N. E. 450, 453; and *State* v. *Dunn* (1932), 203 Ind. 265, 275, 180 N. E. 5, 9. In the first case referred to, the only thing that is said about cross-errors is that: "Cross-errors are assigned, but not upon, nor attached to, the record. We cannot consider them, as the statute requires they should be 'entered upon the transcript.' 2 G. & H. 275, sec. 568." In the second case it is said that: "The transcript contains no assignment of cross-errors, and we do not consider any question attempted to be presented thereon. Ewbank's Manual §125; *Dutton* v. *Dutton*, 30 Ind. 452." In the third case it is said that: "Appellee attempts to assign cross-errors, based upon the court's ruling in sustaining appellant's demurrer to his amended plea in abatement, but no assignment of cross-errors appear on the transcript, and

therefore no error is presented to this court." The first two cases referred to are cited as supporting the statement. It will be noted that the last two cases give no reason for the ruling. They merely rely upon *Dutton* v. *Dutton, supra,* which seems to have been decided upon the theory that the statute requires that the assignment of cross-errors shall be entered upon the transcript. But the Code makes no provision for the assignment of cross-errors, and there is no statutory procedure prescribed for their assignment. The practice of recognizing cross-errors originated with the court, and has been said to be one of the unwritten rules of appellate procedure. *Feder et al.* v. *Field et al.* (1889), 117 Ind. 386, 20 N. E. 129; *American Mutual Life Ins. Co.* v. *Bertram* (1904), 163 Ind. 51, 70 N. E. 258. Section 2-3225 Burns' Ann. St. 1933, §502 Baldwin's 1934, like the statutes that preceded it, requires that appellant's assignment of errors "be entered on the transcript," and this is a reasonable requirement, since the appellant procures the transcript to be prepared, and since his assignment of errors is a pleading charging error, which he is required to support by a transcript of the proceedings which will disclose the error. After the transcript, with the appellant's assignment of errors attached, is filed in the office of the clerk of this court it becomes part of the records of the court. The propriety of permitting any of the parties to attach anything further to the transcript, without leave of court, after it has become a part of the records of this court, may well be doubted. It is the practice, when the appellant files his assignment of errors and transcript, to cause the records to show that both are filed. It has also been the proper practice to file an assignment of cross-errors with the clerk, and have the clerk to mark it filed, and to cause the records to show its filing. After the transcript is filed by the appellant it is generally delivered

to him immediately, or within a short time, to be used in briefing. If the appellee should appear in the clerk's office on the last day for filing cross-errors, and find that the transcript is in a distant part of the state, it might be difficult or impossible to file the cross-errors with the clerk and attach them to the transcript within the time allowed. It seems clear that merely seeking out the transcript and attaching the assignment of cross-errors, without filing it in time in the clerk's office, would not suffice. We see no substantial reason for the requirement that the assignment of cross-errors be entered upon the transcript if it is filed and made a part of the records in the case in this court. The impression of the court in the early case, that the statute requires it, is seen to be erroneous. The timely filing in the clerk's office, so that the cross-errors may become a part of the records in the case in this court, is the important thing, and, since the transcript is not always in the clerk's office at the time of filing, they may be entered upon the transcript, if that is deemed necessary, at any time thereafter by the clerk, or, upon motion, by order of the court. Appellees have filed a motion asking an order that their assignment of cross-errors be entered upon the transcript *nunc pro tunc* as of the date of filing. The motion is sustained, and it is so ordered.

In acting as trustee, and conserving and administering the trust, in making collections of income, and in conserving the trust property, the trustees rendered a useful and valuable service to the trust estate; a service that it was contemplated should be, and which the necessities required that some one should render. They took possession, when the former trustees abandoned their duties, under an appointment by a court which they apparently, in good faith, believed to have the power of appointment. They were at least *de facto* trustees, their accounts have been ap-

proved, and their administration was prudent and faithful, and just as valuable to the trust as though they had been *de jure* trustees. No reason why this reasonable amount should not have been allowed as compensation for services and expenses is suggested by appellants other than that the court was without jurisdiction of the cause. As indicated above, this is not a sufficient reason. The amount found by the court to be reasonable should have been allowed as an expense of administering the trust, and should be ordered paid out of income as an expense of administration. The appellants filed a brief questioning the assignment of cross-errors and the brief thereon. But appellants have no interest, since the expenses will be paid out of income otherwise payable to Margaret Gray Patterson.

At the bar, in oral argument, all parties have agreed that, since the matters involved are of equitable cognizance, such orders should be made as will finally terminate the controversy and dispose of all questions appearing upon the record. That there is jurisdiction to do so is not questioned. *Rooker et al.* v. *Fidelity Trust Co., Trustee, et al.* (1931), 202 Ind. 641, 177 N. E. 454; §2-3229 Burns' Ann. St. 1933, §467 Baldwin's 1934.

It is suggested by appellee Margaret Gray Patterson that the conduct of the appellants in this long and protracted litigation has been vexatious and designed to prevent appellee from receiving the income due her under the provisions of the trust. The voluminous pleadings, the duplication of methods by which the jurisdiction of the court has been questioned, and the apparent desire to prolong the controversy, lend strong support to the contention. The appellee Margaret Gray Patterson performed a service to the trust estate by filing her petition and causing a citation to issue requiring that the estate and its adminis-

tration be brought within the jurisdiction of the Vanderburgh Probate Court. Such supervision is in the interest of, and for the protection of, all parties in interest in the trust. By objecting to the assertion of jurisdiction by the Vanderburgh Probate Court, the only court within the State of Indiana having jurisdiction of the trust, when the federal courts had declined to retain jurisdiction, the appellants were rendering a dis-service to the trust estate. It must be presumed that trusts are benefited by supervision of a court of competent jurisdiction, and that an effort to prevent supervision by any court is against the interest of the trust. If, upon the petition of the appellee Margaret Gray Patterson, and the trustees' submission to the jurisdiction, the matter had ended, the appellee Margaret Gray Patterson would have been to but slight expense, but, since appellants resisted, the court has taken jurisdiction through a long, and tedious course of litigation, involving these two appeals with records and briefs aggregating thousands of pages. The appellee Margaret Gray Patterson must have incurred a large expense in protecting herself and the other beneficiaries of the trust in the obvious right to have the administration supervised by the court. One who volunteers services or incurs expenses which are a benefit to a trust, and which may be deemed reasonably necessary to protect the trust, should be reimbursed out of the trust.

The controversy required the appointment of a receiver *pendente lite*. The expenses and services of the receiver, in the normal management of the trust, should be allowed, and charged as a normal cost of administering the trust, to be paid out of income. But the receiver, no doubt, incurred costs and expenses because of this protracted litigation, which otherwise would not have accrued. These latter expenses

of the receiver, in a reasonable amount, should be allowed as costs and charged against the appellants, together with all of the other normal costs of the litigation. The reasonable expenses and counsel fees of the appellee Margaret Gray Patterson should be allowed as a charge against the trust and paid out of the corpus of the trust, and not out of income. A trustee, other than William W. Gray, should be appointed by the court to manage and administer the trust under the supervision and direction of the Vanderburgh Probate Court.

Both judgments of the court are in all things affirmed, except as to the subject of cross-errors above referred to. They are ordered modified in that respect, and in respect to the allowances above referred to.

ON PETITION FOR REHEARING AND MOTION TO
MODIFY MANDATE.

FANSLER, J.—The appellee Margaret Gray Patterson has petitioned for a restatement of a portion of the opinion, and a modification of the mandate, in respect to certain expenses of administration.

It is assumed in the original opinion that the expenses and compensation of the *de facto* trustees, amounting to $35,057.64, covered matters involved in the normal operation and administration of the trust. It is pointed out, however, that in the court's Finding No. 26 it is disclosed that only $2,000 of this amount accrued in the ordinary administration of the trust; that $1,000 represents charges for counsel fees incurred in partition suits; that the remaining $32,-057.64 represents expenses and counsel fees involved in the present litigation. The original mandate directed that the entire amount be allowed as a charge against the trust, to be paid out of income. The mandate is modified in that respect, and the same is ordered allowed

and paid out of the trust, $2,000 out of income, and $33,057.64 out of the corpus.

The special judge before whom the issues were tried is directed to give notice, and an opportunity to be heard, to all of the parties; and to determine the reasonable value of the services, costs, expenses, and counsel fees of the receiver, and allow that portion of the same occasioned and incurred through the normal management and administration of the trust as a charge against the trust, to be paid out of income, and allow the remainder thereof, incurred through and because of this litigation, including the appeal, as court costs, charged against the appellants; and to determine and make a reasonable allowance for the expenses and counsel fees of the appellee Margaret Gray Patterson incurred in this litigation, and order the same paid out of the corpus of the trust; and the special judge is directed to make such further orders as shall be necessary to carry out all of the directions and mandates in the original opinion and in this opinion, including an order appointing a successor trustee; all to be embodied in a final decree.

The appellants had notice of this petition, and filed a brief in respect to the matters involved.

The appellants' petition for rehearing presents no question that was not considered and determined by the original opinion, and it is denied.